## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PEOPLE'S PARTY OF FLORIDA, *et al.*,

    *Plaintiffs*,

v.                               CASE NO. 8:22-cv-1274-TPB-AEP

FLORIDA DEPARTMENT OF STATE,
DIVISION OF ELECTIONS, *et al.*,

    *Defendants*.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION
## TO MOTION FOR PRELIMINARY INJUNCTION

Defendants, Secretary of State Cord Byrd and the Florida Department of State, Division of Elections (collectively the "Secretary"), and Pasco County Supervisor of Elections Brian Corley, pursuant to this Court's Order (DE 5), respond in opposition to Plaintiffs' "Emergency" Motion for Preliminary Injunction (DE 3).

## I.    INTRODUCTION

Party-loyalty provisions have been a fixture of state election codes for decades. Usually, they require a person to have been affiliated with a political party—or at least disaffiliated from all other parties—for some period of time before seeking the party's nomination for office. These provisions promote the stability of the political process by prohibiting fly-by-night candidacies prompted by short-range political goals, pique, or personal quarrel, and preventing opportunism, gamesmanship, and voter confusion. Florida's provision, which requires a 365-day affiliation, advances the same objectives.

Plaintiffs' motion is both legally and factually flawed. It is well established that, federal courts ordinarily should not enjoin state election laws in the period close to an election. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006). Plaintiffs here could have filed this action last September, but instead filed their complaint and declared an emergency ten days before the start of the qualifying period, in the midst of the election process, with primary-election voting set to begin next month. It is too late now to change the rules.

Nor have Plaintiffs established (as *Purcell* requires them to do) that their position is entirely clear-cut. *See League of Women Voters of Fla.*, *Inc. v. Fla. Sec'y of State*, 32 F.4th 1363 (11th Cir. 2022). Plaintiffs suggest that political parties have an unfettered right to determine who may participate in their primary elections as voters and candidates, but no case supports that sweeping proposition. On the contrary, courts have long upheld party-loyalty provisions similar to Florida's. Plaintiffs' factual position is no stronger; their candidate has taken none of the required steps to initiate a candidacy, while the email attached to her Complaint reveals her complete indifference to seeking the nomination of the People's Party or of the Democratic Party, or running without a party affiliation, or as a write-in candidate, or for nonpartisan office—validating the precise interests the challenged law is designed to serve. This Court should refuse to alter the State's election laws with its 2022 primary and general elections close at hand.

## II.   BACKGROUND

Plaintiffs are a minor political party—People's Party of Florida (the "Party")—and three of its officers, including Elise Mysels, the Party's putative "candidate for the Pasco County Board of County Commissioners." DE 1 ¶¶ 10–13. Plaintiffs challenge

the constitutionality of section 99.012(1)(b)2. of the Florida Statutes—the "Affiliation Provision"—under the First and Fourteenth Amendments. The Affiliation Provision requires "any person seeking to qualify for nomination as a candidate of any political party" to state that the person has "been a registered member of [that party] . . . for 365 days before the beginning of qualifying preceding the general election for which the person seeks to qualify." DE 1 ¶ 28. Because the candidate qualifying period began on June 13, 2022, DE 1-2 at 8, the 365-day period here extends back to June 12, 2021.

The Affiliation Provision has been in effect since May 6, 2021. Laws of Fla. Ch. 2021-11, §§ 12, 32, http://laws.flrules.org/2021/11. Between 2011 and 2021, Florida law similarly required a person who sought a political party's nomination to have been *disaffiliated* from all other parties for 365 days before the beginning of the qualifying period. *See* Laws of Fla. Ch. 2011-40, § 13, http://laws.flrules.org/2011/40. The disaffiliation requirement would have barred Mysels candidacy as well, since Mysels was registered as a member of the Democratic Party until June 21, 2021. DE 1-2 at 13.

The Party was recognized in Florida on September 1, 2021, after the adoption and therefore with knowledge of the Affiliation Provision. DE 1 ¶ 2; DE 1-2 at 5. The Party was then put on notice that it is "your responsibility to read, understand, and follow the requirements of Florida's election laws," which include the Affiliation Provision. DE 1-2 at 6 (acknowledgment letter from Division of Elections). Florida's election laws also prescribe the qualifying period for any office, and consequently the date by which party affiliation must be established. DE 1 ¶¶ 3–4; *see* Fla. Stat. § 99.061.

Within the 365-day affiliation period, Mysels has been a member of *two* political

3

parties, and for a time had *no* party affiliation at all. DE 1-2 at 13. Though a member of the People's Party since September 13, 2021, Mysels did not inquire after joining the Party about qualifying as a candidate until May 10, 2022, DE 1 ¶ 24; DE 1-2 at 12, a month before the *second* qualifying period, Fla. Stat. § 99.061(1), (2). The deadline to submit a petition to qualify by the petition method (in lieu of paying a fee) was six days away. DE 1 ¶ 7; Fla. Stat. § 99.095(3). Even then, Mysels did not limit her inquiry to seeking the *Party's* nomination; she inquired about seeking office "either affiliated with the Democratic Party, Non-Party Affiliated, or affiliated with the People's Party." DE 1-2 at 12. She even referenced the option of running in a nonpartisan race or as a write-in candidate, DE 1-2 at 12, both of which are unaffected by the Affiliation Provision.

Candidates can begin to raise and spend money and collect petitions for ballot placement *before qualifying*, as soon as they file Form DS-DE 9 to designate a campaign treasurer. Fla. Stat. § 106.021(1)(a). Nevertheless, Mysels has not filed a DS-DE 9 and cannot therefore lawfully raise or spend any money, and did not submit a petition by the May 16 deadline. Ex. A (Corley Decl.) ¶ 9; Fla. Stat. § 99.095(3). Nor has Mysels filed any other paperwork necessary to secure ballot placement, Ex. A ¶ 9; Fla. Stat. § 99.061(7)(a) (listing the items required to be submitted by the end of the qualifying period), even though candidates may submit these items as much as two weeks before the start of the qualifying period (*i.e.*, as early as May 30), Fla. Stat. § 99.061(8). The deadline to do so is tomorrow at noon. DE 1 ¶¶ 4–5; Fla. Stat. § 99.061(2); Ex. A ¶ 4.

## III.   ARGUMENT

A preliminary injunction is an drastic remedy intended to preserve the relative

positions of the parties pending a merits determination. *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990). A movant must clearly show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury outweighs any potential harm to the defendants; and (4) that injunctive relief will not disserve the public interest. *Id.*

## A.   The *Purcell* Principle Bars the Requested "Emergency" Relief.

This challenge comes way too late. The last election cycle made one thing clear: absent the most extraordinary circumstances, federal courts will not enjoin state election laws in the period close to an election, and appellate courts will act quickly to stay late-breaking district-court injunctions. No fewer than *19 times* during the 2020 election cycle, federal appellate courts stayed injunctions that prohibited enforcement of state election laws.[1] As recently as last month, the Eleventh Circuit did the same. *See League of Women Voters*, 32 F.4th 1363. These cases send an unmistakable message: to avoid disrupting the work of election administrators and shaking public confidence in the fairness, neutrality, and integrity of the election process, federal courts almost

---

[1] *See, e.g., Clarno v. People Not Politicians Or.*, 141 S. Ct. 206 (2020); *Merrill v. People First of Ala.*, 141 S. Ct. 190 (2020); *Merrill v. People First of Ala.*, 141 S. Ct. 25 (2020); *Andino v. Middleton*, 141 S. Ct. 9 (2020); *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020); *Curling v. Sec'y of State for Ga.*, No. 20-13730-RR, 2020 WL 6301847 (11th Cir. Oct. 24, 2020); *Common Cause Ind. v. Lawson*, 978 F.3d 1036 (7th Cir. 2020); *Org. for Black Struggle v. Ashcroft*, 978 F.3d 603 (8th Cir. 2020); *Priorities USA v. Nessel*, 978 F.3d 976, 978 (6th Cir. 2020); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220 (5th Cir. 2020); *Mi Familia Vota v. Hobbs*, 977 F.3d 948 (9th Cir. 2020); *Common Cause Ind. v. Lawson*, 977 F.3d 663 (7th Cir. 2020); *New Ga. Project v. Raffensperger*, 976 F.3d 1278 (11th Cir. 2020); *A. Philip Randolph Inst. of Ohio v. Larose*, 831 F. App'x 188 (6th Cir. 2020); *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639 (7th Cir. 2020); *Ariz. Democratic Party v. Hobbs*, 976 F.3d 1081 (9th Cir. 2020); *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564 (5th Cir. 2020); *Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020); *Thompson v. DeWine*, 959 F.3d 804 (6th Cir. 2020).

never change the rules that govern upcoming elections.

This strong presumption against federal-court interference in ongoing elections has come to be called the "*Purcell* principle." *Purcell*, 549 U.S. 1. The *Purcell* principle "teaches that 'federal district courts ordinarily should not enjoin state election laws in the period close to an election.'" *League of Women Voters*, 32 F.4th at 1370 (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurral)). It recognizes that "[c]ourt orders affecting elections . . . can themselves result in voter confusion," *id*. at 1371 (quoting *Purcell*, 549 U.S. at 4–5), and that even "seemingly innocuous late-in-the-day judicial alterations to state election laws can interfere with the administration of an election and cause unanticipated consequences," *id*. (quoting *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (Kavanaugh, J., concurral)). Thus, when an election is close at hand, a party that seeks a preliminary injunction must do more than establish a likelihood of success on the merits; it must prove that "its position is 'entirely clearcut.'" *Id*. at 1372 (noting that "a plaintiff [must show] . . . that its position is 'entirely clearcut'" in order "to obtain a 'late-breaking injunction' in the first place" (quoting *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurral))). Under *Purcell*, emergency injunctions that alter the long-standing plans and preparations of election administrators are a thing of the past. And plaintiffs who consider themselves aggrieved may not declare an emergency and chaotically rush to court at the last moment, but rather must think ahead and bring their lawsuits timely.

In *League of Women Voters*, the Eleventh Circuit invoked *Purcell* to stay an injunction that prohibited enforcement of state laws that regulated voter-registration

activities, drop boxes, and solicitation near drop boxes and polling places. *Id.* at 1369. When the district court entered its injunction on March 31, 2022, voting in the August 23 primary election was scheduled to begin in fewer than four months. *Id.* at 1371. Citing *Milligan*, in which the Supreme Court had stayed an injunction entered about four months before an election, the court concluded that the injunction issued within the temporal zone to which *Purcell* applies. *Id.* at 1371 & n.6. The court then proceeded to review the injunction and determined that, because the plaintiffs' position was not "entirely clearcut," the district court should not have issued the injunction. *Id.* at 1374 (quoting *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurral)).

If *Purcell* forbade the issuance of an injunction in *League of Women Voters* in light of Florida's upcoming 2022 primary election, then it necessarily forbids relief here. Plaintiffs filed this challenge on June 3—*nine weeks* after the district court issued its ill-fated injunction in *League of Women Voters*, and only 14 days before tomorrow's close of the qualifying period. Election officials will then design the 2022 primary-election ballots that must be printed before the July 9 deadline to mail requested vote-by-mail ballots to absent uniformed services and overseas voters. 52 U.S.C. § 20302(a)(8); Fla. Stat. § 101.62(4)(a). All other pending vote-by-mail ballot requests must be fulfilled by July 21. Fla. Stat. § 101.62(4)(b). Early voting will begin on August 13, ten days before the August 23 primary election. Fla. Stat. §§ 100.031, 100.061, 101.657(1)(d). Immediately after the primary election, election administrators will begin the same demanding process of designing and mailing ballots and conducting vote-by-mail, early, and election-day voting for the general election in November. Ex. A ¶ 13; Fla.

Stat. § 100.031. The "emergency" injunction that Plaintiffs seek—the suspension of a state law to allow a single candidate to qualify by *tomorrow's* deadline—is exactly the sort of last-minute relief that *Purcell* condemns and *League of Women Voters* forecloses.

While *Purcell* does not necessarily require a showing of dilatoriness, Plaintiffs' dilatoriness confirms *Purcell*'s application. *Milligan*, 142 S. Ct. at 881 (Kavanaugh, J., concurral) (noting that a plaintiff who has "unduly delayed bringing the complaint to court" cannot overcome *Purcell*). Plaintiffs could have sought an injunction as early as September 13, 2021, when Mysels became a member of the Party. DE 1-2 at 13. If they had, then this Court would likely have had ample time to resolve their claims, and election officials would not have been diverted from their important duties during the week of candidate qualifying. Instead, Plaintiffs waited 264 days from September 13, 2021, to June 3, 2022, to declare an "emergency" ten days before the qualifying period. With slight diligence, Plaintiffs could have avoided the bar imposed by *Purcell*. Instead, Plaintiffs must prove that their case is entirely clear-cut. This they cannot do.

**B.    Plaintiffs Have Failed to Show Any Element Necessary for a Preliminary Injunction.**

1.   Plaintiffs' position is not entirely clear-cut.

Plaintiffs' motion is factually and legally deficient. Plaintiffs have not produced *any* evidence to support their request, nor have they addressed controlling precedent, *e.g.*, *Storer v. Brown*, 415 U.S. 724 (1974), or the reality that the "Party's candidate" is indifferent to being the Party's candidate, which only proves the value of the Affiliation Provision to preclude fly-by-night candidacies. These deficiencies are addressed below.

First, "to carry its burden, a plaintiff seeking a preliminary injunction must offer proof beyond unverified allegations in the pleadings," and "conclusory affidavits are insufficient." *Palmer v. Braun*, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001), *aff'd*, 287 F.3d 1325 (11th Cir. 2002). Plaintiffs have offered only a "Verified Complaint," *see* DEs 1, 3, 12, and their verified allegations do not establish the material facts necessary to support their motion. Thus, the Complaint alleges that Mysels "is the People's Party candidate for the Pasco County Board of County Commissioners," DE 1 ¶ 11, but Mysels has not filed any paperwork to open a campaign account, Ex. A ¶ 9, and her own email dated May 10, 2022—which is attached to and therefore part of the Verified Complaint—reveals that Mysels is *not* committed to seeking the Party's nomination, but might instead seek the Democratic Party's nomination, or run for office without any party affiliation, or run as a write-in candidate or for a nonpartisan office. DE 1-2 at 12–13. The Complaint does not allege that Mysels intends to file qualifying papers to seek the Party's nomination, or disclose any voter support for Mysels' candidacy. *See De La Fuente Guerra v. Democratic Party of Fla.*, No. 4:16-cv-00026-RH-CAS (N.D. Fla. Jan. 23, 2016) (DE 7) (denying preliminary injunction in ballot-access case where "plaintiffs have tendered no evidence that [the candidate] has any support at all beyond the seven voters who are plaintiffs"). As voters in St. Johns and Miami-Dade Counties, Plaintiffs Wolfe and Nieto are ineligible to vote in Pasco County. No affidavits flesh out Plaintiffs' necessary showing. This dearth of evidence undermines Plaintiffs' case.

Second, Plaintiffs ignore the precedents that uphold party-loyalty requirements such as the Affiliation Provision. For example, in *Storer*, the Supreme Court upheld a

state law that excluded from the general-election ballot independent candidates who had been registered with a political party within one year before the primary election. The Supreme Court noted that "there must be substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." 415 U.S. at 730. By foreclosing "independent candidacies prompted by short-range political goals, pique, or personal quarrel," the statute served the State's "compelling" interest in the "stability of its political system." *Id.* at 735–36. That interest outweighed "the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status." *Id.* at 736. To be sure, the statute required an aspiring candidate to "anticipate his candidacy substantially in advance of his election," but the "required foresight" of one year was reasonable, and its "direct impact [was] on the candidate, and not voters." *Id.* at 734. The statute, moreover, mirrored another statute that closed a party's primary election to candidates who had been members of other political parties within one year before qualifying. *Id.* at 733. The Supreme Court upheld the statute with "no hesitation." *Id.*

In *Van Susteren v. Jones*, 331 F. 3d 1024 (9th Cir. 2003), a candidate who sought to contend for the Libertarian Party's nomination challenged a statute that excluded candidates who had not been disaffiliated from membership in other political parties for at least one year. In upholding the statute, the court explained that the party-loyalty requirement served the state interest "in maintaining the stability of the state's political system." *Id.* at 1026. Like the bar against independent candidacies in *Storer*, a one-year disaffiliation provision promoted stability "by discouraging candidates from making a

partisan affiliation on the spur of the moment," *id.*, "prompted by short-range political goals, pique, or personal quarrel," *id.* (quoting *Storer*, 415 U.S. at 735). "The interest in a stable electoral process outweighs any interest the candidate or his supporters may have in making last-minute affiliation decisions." *Id.* The Ninth Circuit thus upheld a statute that closely resembles the Affiliation Provision to which Plaintiffs object here.

As *Storer* and *Van Susteren* recognized, affiliation and disaffiliation requirements are justified because they stabilize the direct primary process by refusing to recognize candidates who do not make timely plans to join a political party, and working against fly-by-night candidacies "prompted by short-range political goals, pique, or personal quarrel." *Storer*, 415 U.S. at 735. Preventing voter confusion, party-swapping, and fraudulent and frivolous candidacies are also well-recognized state interests that justify candidate-party restrictions. *See, e.g., id.* at 732–33, 736; *Bullock v. Carter*, 405 U.S. 134, 145 (1972); *Libertarian Party of Fla. v. State of Fla.*, 710 F.2d 790, 792 (11th Cir. 1983); *Fowler v. Adams*, 315 F. Supp. 592, 594–95 (M.D. Fla. 1970); *Wetherington v. Adams*, 309 F. Supp. 318, 321 (N.D. Fla. 1970). Requiring candidates to "make a preliminary showing of substantial support before appearing on the ballot" is an equally legitimate objective. *Independent Party of Fla. v. Sec'y of State*, 967 F.3d 1277, 1282 (11th Cir. 2020).

Florida courts have an even longer history of upholding affiliation provisions. In *Crowells v. Petersen*, 118 So. 2d 539 (Fla. 1960), the Court sustained a provision that required a candidate for a party's nomination to have been a member of the party for at least two years—twice as long as the Affiliation Provision requires. The Court found it "a reasonable regulation" and foreshadowed the state interests later recognized in

*Storer*: "the maintenance of party loyalty and a perpetuation of the party system which the courts have universally held to be essential to the preservation and perpetuation of our political life." *Id.* at 539–40; *see also Mairs v. Peters*, 52 So. 2d 793, 795 (Fla. 1951) (upholding requirement that limited primary-election participation to voters who did not vote for another party's candidates in the last election and pledge to vote only for the party's candidates in the next election). Then, in *Driver v. Adams*, 196 So. 2d 916 (Fla. 1967), the Court upheld Florida's previous 2-year disaffiliation provision. *See also Polly v. Navarro*, 457 So. 2d 1140, 1143 (Fla. 4th DCA 1984) (upholding 6-month (from general election) disaffiliation provision). In *Argenziano v. Detzner*, No. 2011-CA-3484, 2012 WL 3143585 (Fla. 2d Cir. Ct. Mar. 23, 2012), the court relied on these cases to uphold a 365-day disaffiliation provision applicable to candidates from 2011 to 2022.[2]

Plaintiffs have not even performed the balancing test—often called the *Anderson-Burdick* test—that governs challenges to election regulations. Plaintiffs quote the test at length on page 6 of their motion, but never apply it. DE 3 at 4–17 (explaining cases but engaging in no analysis). Plaintiffs *cannot* demonstrate that their position is entirely clear-cut, or establish a likelihood of success, until they engage in the required analysis.

Plaintiffs' reliance on *Tashjian* is misplaced. *Tashjian* concerned a party's right

---

[2] Even a four-year disaffiliation provision has been upheld. *State ex rel. Bible v. Bd. of Elections*, 258 N.E. 2d 227, 229 (Ohio 1970). On the other side of the coin too, "waiting periods before *voters* themselves may be permitted to change their registration and participate in another party's primary" have been upheld. *Am. Party of Texas v. White*, 415 U.S. 767, 786 (1974). At bottom, the Affiliation Provision is like those "used generally by the several states, designed to fit into our party system which has always been a part and parcel of our democratic system of election machinery." *Mairs*, 52 So. 2d at 795.

to determine by internal rule whether *unaffiliated voters* may participate in selecting its nominees. 479 U.S. at 210. To hear Plaintiffs tell it, *Tashjian* held that political parties enjoy an unfettered constitutional right to determine the qualifications of voters and candidates in their primaries. But *Tashjian* did not so hold, and is easily distinguished.

First, *Tashjian* itself recognized that challenges to state election laws cannot be resolved by any "litmus-paper test." *Id*. at 213 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Rather, the "character and magnitude of the asserted injury" must be weighed against the State's justifications. *Id*. at 214 (quoting *Anderson*, 460 U.S. at 789). Thus, in *Tashjian*, the Court conducted an extensive review of the justifications advanced by the State for the law challenged there—a law that prohibited unaffiliated voters from participating in a party's primary where the party itself had adopted a rule to the contrary. *See id*. at 217–25. The Court's conclusion that the State's interests did not justify the specific restriction challenged there (which differs in material ways from the Affiliation Provision here) does not therefore establish the sweeping proposition that States may not prescribe qualifications for primary-election voters and candidates.

Indeed, the Supreme Court's subsequent cases have upheld restrictions on both voter and candidate participation in political-party primaries. In *Timmons v. Twin Cities New Area Party*, 520 U.S. 351, 360 (1997), the Court upheld a law that prohibited one political party from nominating a candidate nominated by another political party. And in *Clingman v. Beaver*, 544 U.S. 581 (2005), the Court upheld a statute that prohibited voters registered with one party from voting in another party's primary. *Tashjian* did

not confer on political parties an absolute right to establish the terms of participation in their primary elections; rather, the constitutionality of each statute depends on the specific justifications advanced in support of the challenged law. And Plaintiffs here do not attempt to perform the case-specific balancing analysis that precedent requires.

*Tashjian* is distinguishable in other important ways. First, *Tashjian* concerned a restriction on voters—not candidates. *Storer* itself differentiated between election laws that impact voters and those that impact candidates, 415 U.S. at 734 (noting that the challenged law's "direct impact is on the candidate, and not voters"), and explained that "[o]ther variables must be considered where qualifications for candidates rather than for voters are at issue," *id.* at 732. Second, *Tashjian* relied heavily on the conflict between the party's internal rule and the closed primary system mandated by state law. Here, there is no allegation that the Party's rules allow individuals who have not been affiliated with the Party for at least 365 to vie for its nomination. In fact, section 2.1.2. of the Party's bylaws states that any provision of the Party's bylaws that conflicts with "applicable law or regulation shall be void and without effect." FLA. DEP'T OF STATE, DIV. OF ELECTIONS, https://dos.myflorida.com/elections/candidates-committees/political-parties.[3] So unlike *Tashjian*, the Party's rules *endorse* the Affiliation Provision.

---

[3] Attached as Exhibit B, the Party's bylaws are publicly available on the Florida Department of State's website, under the Party's "Campaign Documents." On a motion to dismiss, this Court may take judicial notice of facts "not subject to reasonable dispute." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 842 (11th Cir. 2004); *see also* Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."). A political party's records made available by the state agency that regulates it are therefore judicially noticeable. *See Terrebonne v. Blackburn*, 646 F.2d 997, 1000 n.4 (5th Cir. June 1, 1981) ("[C]ourts have not hesitated to take judicial notice of agency records and reports.").

The Supreme Court has distinguished between *valid* restrictions that preclude a political party from having its preferred candidate appear on the ballot as its nominee from *invalid* restrictions that control a party's "internal affairs and core associational activities." *Timmons*, 520 U.S. at 360. The latter category of restrictions were at issue in *Tashjian*. The Affiliation Provision does not regulate any political party's internal affairs or core associational activities. After all, "[w]hether the party still wants to endorse a candidate who . . . will not appear on the ballot as the party's candidate, is up to the party," and the party "remains free to endorse whom it likes." *Id.* (upholding law that precluded a party's candidate from appearing on the ballot as its nominee if nominated by another party). Voters too "remain free to support and promote other candidates who satisfy the State's disaffiliation requirements." *Anderson*, 460 U.S. at 792 n.12.

Last, Plaintiffs have not established an entirely clear-cut case because the only candidate identified in the Complaint is at best indifferent to the Party. *See* DE 1-2 at 12. In her only inquiry into becoming a candidate, Mysels referenced several options: seeking the nomination of the Democratic Party, running without a party affiliation or as a write-in candidate, or seeking a non-partisan office. DE 1-2 at 12–13. The fact that Mysels is an *officer* of the Party but is open to other options undermines her party loyalty. Party-loyalty provisions exist to prevent opportunistic candidacies founded on wavering loyalties and late interest, which exemplify false and fraudulent candidacies.

## 2.  Plaintiffs do not face a substantial threat of irreparable injury.

The Eleventh Circuit has repeatedly noted that an "asserted irreparable injury

must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000) (internal marks omitted). Plaintiffs' nine-month delay in seeking injunctive relief on an "emergency" basis undermines their assertion that the Affiliation Provision subjects them to a substantial threat of irreparable harm.

In *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016), the court explained that, because "a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits," a "delay in seeking a preliminary injunction of even only a few months . . . militates against a finding of irreparable harm." Thus, a litigant's "failure to act with speed or urgency . . . necessarily undermines a finding of irreparable harm." *Id.*; *accord Pals Grp., Inc. v. Quiskeya Trading Corp.*, No. 16-23905-CIV, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) (concluding that "unexplained delays of a few months negate any claim of irreparable harm" and that federal district courts typically decline to issue preliminary injunctions in the face of an unexplained delay of more than two months).

Here, the Party was organized, and Mysels became a member of the Party, in September 2021. DE 1-2 at 5, 13. Plaintiffs could have taken these steps earlier—more than 365 days before the qualifying period. In addition, once the Party was organized and Mysels became a member of the Party, Plaintiffs could have moved for injunctive relief promptly, but instead did nothing from September 13, 2021, to June 3, 2022—a period of 264 days—before declaring an "emergency." DE 3. Plaintiffs do not explain why they failed to exercise sufficient foresight to organize their Party on time or why, even after organizing their Party last September, they took no action for nearly nine

months. "Self-inflicted wounds do not constitute irreparable harm." *Scroos LLC v. Att'y Gen. of United States*, No. 6:20-cv-00689, 2020 WL 5534281, at *3 (M.D. Fla. Aug. 27, 2020). In light of Plaintiffs' unexplained delay, any injury here is self-inflicted. *See also Lawson*, 978 F.3d at 1043 (explaining that "plaintiff brought the *Purcell* rule upon itself by waiting more than a year to bring this lawsuit" after passage of the challenged law).

Plaintiffs have not shown irreparable harm, even apart from their lengthy delay. The Party has shown *no* voter support outside of the individual Plaintiffs, who are all Party officials. Nor has the Party's *only* putative candidate shown *any* voter support. The other two individual Plaintiffs cannot even vote in Pasco County, DE 1 ¶¶ 12–13 (alleging they are voters in other counties), and therefore lack standing. Mysels has not opened a campaign account or submitted a petition or any other paperwork needed to qualify as a candidate, Ex. A ¶ 9—and does not even allege that she intends to, DE 1.

Any right of ballot access, moreover, belongs to Mysels and not the Party. It is Mysels who seeks to qualify for placement on the ballot, and Mysels for whom voters will vote (or not). Only if a candidate chooses to seek the Party's nomination will the Party's 3-letter party identifier be placed on the ballot by the candidate's name. Fla. Admin. Code R. 1S-2.032(4)(a)8., (9)(c). Even then, "the First Amendment does not give political parties a right to have their nominees designated as such on the ballot." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 453 n.7 (2008); *accord Timmons*, 520 U.S. at 361 (concluding that a party is not "absolutely entitled to have its nominee appear on the ballot as that party's candidate"). Parties are represented by and through the *candidates* who choose to associate with them. The Party can have its

candidates run as write-ins in the 2022 cycle and endorse, campaign for, and contribute to *any* candidate (of any party affiliation) who shares its values. *See Timmons*, 520 U.S. at 361 (noting that a party "retains great latitude in its ability to communicate ideas to voters and candidates through its participation in the campaign" and is free to "spread its message to all who will listen"). And by September 2022, the Affiliation Provision's 365-day period as applied to Mysels will have passed, and she can then seek the Party's nomination for future elections, so long as she remains a member of the Party and meets all applicable requirements under Florida law, including any qualifying periods.

Nor is Mysels' ballot-access right impaired. She may qualify in these last hours for the 2022 elections as a candidate for a nonpartisan office or as a write-in candidate for any office. Indeed, only last month, Mysels inquired about how to get on the ballot in any way she could, even if it meant affiliating with another party or no party at all. *See* DE 1-2 at 12. The only injury here is at best the frustration of an indifferent desire— unconfirmed by action—to appear on the ballot as one party's candidate, which is remote and speculative and cannot support "emergency" preliminary injunctive relief.

    3.  <u>An injunction will harm the public interest, and that harm outweighs any harm to Plaintiffs.</u>

When public officials oppose a motion for preliminary injunction, the third and fourth preliminary-injunction requisites—the balancing of harms and consideration of the public interest—merge. *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1293 (11th Cir. 2021). The injunction that Plaintiffs invite this Court to issue would disserve the public interest, and that injury outweighs any that Plaintiffs claim to suffer.

First, the "inability to enforce its duly enacted [laws] clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018); *accord Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). The law challenged here serves the important interests outlined above: the stability of the political system; discouragement of frivolous, fraudulent, or spur-of-the-moment candidacies prompted by short-range political goals, pique, or personal quarrel; and preventing opportunism gamesmanship, and voter confusion.

Second, voter confidence is impaired when courts intervene to change the rules in favor of particular litigants in the period close to an election. *See New Ga. Project*, 976 F.3d at 1284 (concluding that a stay "promotes confidence in our electoral system— assuring voters that all will play by the same, legislatively enacted rules"). Here, for example, the Party leadership has declared Mysels "the People's Party candidate" *even before* a primary election by party members, DE 1 ¶ 11, and ask this Court to effectuate that choice. Plaintiffs thus seek relief for a single, hand-selected candidate who filed litigation with the Party's supposedly predetermined support. An injunction that alters pre-established rules to confer a special benefit on a single candidate would harm public confidence in the fairness and impartiality of the election process. As the Supreme Court recognized, even in the best of circumstances, "[c]ourt orders . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4–5.

### C.     As Against the Secretary, there is No Standing and He is Immune.

As to the Secretary, there is no standing and, alternatively, he is immune from

suit under the Eleventh Amendment. These are additional reasons Plaintiffs cannot show a likelihood of success on the merits. Because the Secretary does not enforce the Affiliation Provision, Plaintiffs lack standing against him to establish subject-matter jurisdiction. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1241 (11th Cir. 2020) (vacating and remanding with instructions to dismiss with prejudice where Secretary "does not enforce the challenged law"); *Hetherington v. Lee*, No. 3:21-cv-671-MCR-EMT, 2021 WL 6882441, at *3 (N.D. Fla. July 12, 2021). The Affiliation Provision requires Mysels to state she meets the 365-day requirement, and then to file that "oath" with her qualifying officer, which is not the Secretary. Fla. Stat. § 99.061(2) (listing the "county supervisor of elections" as the qualifying officer for elections to county office).

Regardless, the Secretary would not be a proper defendant under the *Ex Parte Young* exception to Eleventh Amendment immunity because he does not even have "*some* connection" with the enforcement of the provision and is not "responsible for" any enforcement against Mysels. *Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) (emphasis added). The only allegations against the Secretary are that he "is the Florida Secretary of State" and that the agency he heads has a website that says nothing about the Affiliation Provision. DE 1 ¶¶ 14–15.

The Secretary's arguments in this regard will be fleshed out in his response to the Complaint. He raises them here just to ensure they are not waived and to give the Court notice of other deficiencies in the action.

## IV.   CONCLUSION

Plaintiffs' request for a preliminary injunction should accordingly be denied.

June 16, 2022.                                Respectfully submitted,


*/s/ Andy Bardos*                             */s/ Bradley R. McVay*
ANDY BARDOS (FBN 822671)                      BRADLEY R. MCVAY (FBN 79034)
andy.bardos@gray-robinson.com                 *General Counsel*
GRAYROBINSON, P.A.                            brad.mcvay@dos.myflorida.com
301 South Bronough Street, Suite 600          ASHLEY E. DAVIS (FBN 48032)
Tallahassee, Florida 32301-1724               *Deputy General Counsel*
Telephone: (850) 577-9090                     ashley.davis@dos.myflorida.com
*Counsel for Supervisor Corley*               stephanie.buse@dos.myflorida.com
                                              FLORIDA DEPARTMENT OF STATE
                                              R.A. Gray Building, Suite 100
                                              500 South Bronough Street
                                              Tallahassee, Florida 32399-0250
                                              Phone: (850) 245-6536
                                              Fax: (850) 245-6127
                                              *Counsel for Secretary of State*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on this sixteenth day of June 2022.


*/s/ Andy Bardos*
ANDY BARDOS (FBN 822671)