IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| PEOPLES PARTY OF FLORIDA; ELISE MYSELS; ) | | |
| CAROLYN WOLFE; VICTOR NIETO ) | No. **8:22 cv 1274 TPB-AEP** | |
| ) | | |
| Plaintiffs, ) | | |
| v. ) | | |
| ) | Judge Honorable Thomas Barber | |
| ) | | |
| FLORIDA DEPARTMENT OF STATE, DIVISION) | Magistrate Judge Anthony Porcelli | |
| ) | | |
| OF ELECTIONS; CORD BYRD, FLORIDA ) | | |
| SECRETARY OF STATE; BRIAN CORLEY, PASCO) | | |
| COUNTY SUPERVISOR OF ELECTIONS ) | | |
| in their Official Capacities; ) | | |
| Defendants. ) | | |

**PLAINTIFFS' EMERGENCY RULE 59(e) MOTION TO RECONSIDER THE DENIAL
OF PRELIMINARY INJUNCTIVE RELIEF AND MOTION FOR AN EXPEDITED
BRIEFING SCHEDULE
Challenge to the Constitutionality of Fla. Stat. 99.021**

**Standard:** There is no "motion for 'reconsideration' in the Federal Rules of Civil Procedure." *Bass v. United States Dep't of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000). Rather, if filed within ten days of the district court's judgment, such a motion is construed as filed pursuant to Rule 59(e). See Id. A Rule 59(e) motion may be granted if the moving party demonstrates any of the following: (1) the judgment was based upon a manifest error of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) there is an intervening change in controlling law. See 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995).

**Plaintiffs' Move for an Expedited Briefing Schedule**

Due to the exigencies present in this case, the Plaintiffs respectfully move this Honorable Court for Entry of an Expedited Briefing Schedule.

### Introduction

Today is June 30, 2022; 131 days before the November 8, 2022 midterm elections. There is more than enough time to 1) declare Florida's repressive 365-Day Rule unconstitutional as applied to new parties, and, 2) place the People's Party of Florida and its candidate, Elise Mysels on the ballot in Pasco County, Florida. Consequently, *Purcell*'s cautionary "close to the election" warning does not apply here, as *Purcell* was decided 15 days prior to the general election. *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curium). Not a single state in the union has a statute barring new parties from running candidates for 365 days after formation.

### The State's (Dis)Interest in Any Quantum of Voter Support for New Parties

In the State of Florida, a new political party can be formed by ten people with a checkbook, or 10,000 people without a penny to their name, it makes no difference to the state. In fact, Florida prefers receiving the check, as it denotes the petition option as "in lieu of qualifying fee…" Fla. Stat. 99.095.  This fact betrays any *bona fide* concerns raised about authenticity of candidacies or quantum of public support by the Defendants.

The most important, compelling state interest behind the new 365-Day Rule is, apparently, to ensure that any new party will have to sit out at least one two-year election cycle, as the first day of the relevant qualifying period is 148 days from the General Election; it took 48 days to receive an Acknowledgement Letter recognizing the party;

and under Florida Law, the new party will have had to have sat on its hands for 365 days in-between those two events. The other compelling state interest is, apparently, to ensure that any pool of registered voters and thus potential new party candidates would be limited to those willing to forgo voting in the Florida primary whatsoever for at least one cycle. It is a classical discrimination against new parties.

To have formed a new party in Florida during the 2022-2024 election cycle would not have required "foresight" but rather clairvoyance.  Defendants posit, still not understanding the difference between individual voter/candidate rights and party rights: "To be sure, the statute required an aspiring candidate to 'anticipate his candidacy substantially in advance of his election,' but the 'required foresight' of one year was reasonable, and its 'direct impact [was] on the candidate, and not voters.'"  Dkt. 21, PageID 278, quoting *Storer v. Brown*, 415 U.S. 724 (1974).  But what if the voters wanted to form a new party?  The direct impact is then on the voters to be certain, and that impact is that they are deprived of another choice at the ballot box. That is why *Storer*, restraining candidates, not voters collectively, has nothing to do with new party formation, because voters have the right to form parties.

As the example below shows, under the new rule adopted May 6, 2021, it takes substantially more than one year of foresight and the direct impact is on the voters. Note: Florida uses the same qualifying dates for the primary and general elections, despite the fact that the general election is 11 weeks, or 77 days, after the primary; another *Anderson-Burdick* factor.

So, as Defendants concede, the Affiliation Provision has been in effect since May 6, 2021. Dkt. 21, PageID 271. The Peoples Party first made contact with the state's tracking system, submitting their by-laws on July 15, 2021. Dkt. 1-2, PageID 29. If the new party had been recognized by the state through an Acknowledgement Letter <u>that same day</u>, it could not have qualified for the November 8, 2022 General Election, 481 days later. But since it took two tries to get the by-laws approved, it took 48 days, from July 15 until September 1, 2021 for the state to acknowledge the party; and September 1, 2021 is still 433 days before the general election.

Even if the Peoples Party had submitted papers to the state on May 6, 2021, <u>the date the law took effect</u>, it still could not have qualified, because it took the State 48 days to issue an Acknowledgement Letter, which would mean the party would not have been recognized until June 22, 2021, too late to have served its year-long pause before June 13, 2022, the beginning of the relevant qualifying period.

Concerning members and candidates, even if the Peoples Party had been recognized by the state on May 6, 2021, <u>the date the law took effect</u>, any person wanting to support the People's Party would have had to relinquish their right to vote in another primary and register as a People's Party voter by June 13, 2021 in time to be eligible to be a candidate, as if all 6099 people on the party's Florida database would have registered on or before June 13, 2021, in order to finish the one year pause in time for the relevant qualifying period. That presumes that limiting nominations to party members is constitutional, which of course it isn't, see *Tashjian v. Republican Party of Connecticut*, at

479 U.S. 208 at 215; **see also Affidavit of Elise Mysels w/exhibits Exhibit A (in three parts); Additional Affidavits of Plaintiffs Wolfe and Nieto Exhibit B**

Defendants gleefully concede that Plaintiff Mysels wouldn't have qualified regardless under either the old or new law in a Kafka-like passage, because she had the temerity to retain her right to vote while working to form a new party: "The [prior] disaffiliation requirement would have barred Mysels candidacy as well, since Mysels was registered as a member of the Democratic Party until June 21, 2021." Dkt. 21 PageID 271; see **Affidavit of Elise Mysels, with Exhibits, Group Exhibit A.**

### *Anderson-Burdick* Balancing

The 365-Day Rule discriminates against new parties, in violation of bedrock Supreme Court ballot access principles as announced in *Williams v Rhodes* 393 U.S. 23 (1968), and *Norman v. Reed,* 502 U.S. 279 (1992). Those cases illustrate the Supreme Court's commitment to ballot access rights for new parties. The *Anderson-Burdick* balancing of harms test merely provide a framework to enforce federal courts' solicitude towards new parties and their candidates.

The framework for reviewing state election regulations was set forth by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and refined by *Burdick v. Takushi*, 504 U.S. 428 (1992). The *Anderson-Burdick* framework requires the court to weigh the "character and magnitude of the asserted injury" to plaintiffs' constitutional rights against the "precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. The appropriate balance is determined by the magnitude of the burden. If the burden is severe, as here, the regulation will be

upheld only if it is "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (quoting *Norman,* supra, 502 U.S. 279, 289. If the regulations are not a serious burden, the state's regulatory interests will likely justify "reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788.

Under *Anderson-Burdick*, a law severely burdens a new party's right, and requires strict scrutiny from a court, when that law excludes the party from the ballot; see *Kishore v. Whitmer*, 972 F.3d 745 (6th Cir. 2020), relied on by the Plaintiffs for "invoking *Purcell* in a ballot-access case." Dkt. 23, PageID 447.  In fact, the actual gist and core holding in *Kishore* is that, after applying *Anderson-Burdick* extensively, the court concluded that challenged circumstance in that case (a combination of petitioning requirements and COVID stay-at-home order) amounted to an intermediate, not a strict burden on the party's rights.

*Kishore* only mentions *Purcell* as an afterthought; it is thoroughly grounded in *Anderson-Burdick* balancing.  In *Kishore's* II, sections A-D, there are pages of exhaustive *Anderson-Burdick* analysis, and it favors the Plaintiffs in the case at bar.  In contrast, *Purcell* is mentioned in *Kishore* in <u>one sentence</u> in section E, *Other Preliminary-Injunction Factors*. 972 F.3d 745 at 750.

The 6th Circuit contrasted *Kishore*, an intermediate scrutiny case, with *Esshaki v. Whitmer* (813 F. App'x 170, 172 (6th Cir. 2020)), a strict scrutiny case: "Plaintiffs point to our decision in *Esshaki* to suggest that the combination of the ballot-access provisions and the Stay-at-Home Order cannot pass constitutional muster. But there, we applied strict scrutiny because the combined effect of the Stay-at-Home Order

and ballot-access provisions <u>effectively excluded the candidates from the ballot.</u>  *Kishore*, supra, 972 F.3d 745 at 751.  '<u>At bottom, a severe burden excludes or virtually excludes electors ... from the ballot.</u>'" *Kishore*, Id., quoting *Thompson v. Dewine* , 959 F.3d 804, 808 (6th Cir. 2020) (per curiam).

In this case, the People's Party is categorically excluded because of the Candidate Oath required to certify that a candidate has been a member of a party for 365 days, and the People's Party has only been recognized since September 1, 2021.  As illustrated above, even had the People's Party submitted it papers the same day the law was adopted, it would not have qualified.

*Barrie and the Independent American Party of New Mexico v. Duran,* No. 33,755 (N.M. 2012) (August 22, 2012), is an analogous case. See Dkt. 22-3 & Dkt. 22-4; see also *Barrie and the Independent American Party of New Mexico v. Duran*, Verified Emergency Petition for a Writ of Mandamus, August 13, 2012 **(attached hereto).**  Barrie's Verified Emergency Petition successfully relied on *Woodruff v. Herrera*, 09-cv-0449 (D.N.M.) (March 31st, 2011), cited in Dkt. 3 PageID 65-66, and *Woodruff v. Herrera*, 623 F.3d 1103 (10th Cir. 2010).

On August 21, 2012, the New Mexico Supreme Court put Jon Barrie on the November ballot as the nominee of the Independent American Party, even though he hadn't been a member of that party early in the year, similar to this case.

At that time the New Mexico statute said no one could be a party nominee if that person had not been a registered party member on the day the governor proclaimed the election.  The governor's proclamation is in February of election years.  The Independent American Party did not become a qualified party until April 2012, so of course its

Page **7** of **18**

nominee had not been a registered member. After the 2012 New Mexico Supreme Court decision in *Barrie*, the legislature amended the law to exclude new parties from the rule. That is why the current law now excludes new parties, reading: "Except in the case of a political party certified in the year of the election, persons certified as candidates shall be members of that party on the day the governor issues the primary election proclamation." *See* NM Stat § 1-8-2 (2021).

### Justice Kavanaugh's concurrence in *Merrill v Milligan* supports, rather than refutes, Plaintiffs' case here

Defendants are incorrect when they urge this court to rely on Justice Kavanaugh's concurrence to deny injunctive relief, as it actually supports the Plaintiffs in this case. *Merrill v. Milligan* 595 U. S. ____ (2022) (February 7, 2022); SCOTUS *Merrill* docket materials available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/21a375.html

In the first place, *Purcell* cases implicate rules, usually effecting the entire electorate and an entire jurisdiction. *Purcell* balances the harms to the voters which occur from the voters not knowing the rules. *Merrill* concerns redistricting, and the Supreme Court's stay of a District Court's enjoining the congressional map of the entire State of Alabama and ordering it redrawn prior to the primary election. Those opposing the stay noted that 1) the general election was 9 months off and 2) the State had redrawn the map initially in about a week. See SCOTUS Merrill docket, supra. Justice Elena Kagan, joined by Justices Stephen Breyer and Sonia Sotomayor stated "Today's decision is one more in a disconcertingly long line of cases in which this Court uses its shadow docket to signal or

make changes in the law, without anything approaching full briefing and argument." Id. Chief Justice John Roberts also wrote a dissent to the order to grant a stay, but agreed the Court should review the case. Id.

Those favoring the stay noted that it was only 7 weeks before the primary. In response to Justice Kagan's dissent, Justice Brett Kavanaugh wrote a concurrence, joined by Justice Samuel Alito, stating that under *Purcell v. Gonzalez*, courts should not enjoin enforcement of election-related laws or regulations so close to the election. Id.

Again in response, Justice Kagan noted that Alabama "enacted the current map in less than a week and can move quickly again if it wants to", and that their "primary is still four months away, while the general election is nearly nine months away." Id. By contrast, *Purcell* was decided only 15 days before the 2006 election. *Purcell,* supra 549 U.S. 1 at 5.

Regardless of whether one agrees with the stay of the District Court's order in *Merrill*, Justice Kavanaugh's concurrence is important for this case. He set forth seven exemplars that typified *Purcell* principles and two that did not, that were exceptional. Thus, Justice Kavanaugh cited no less than seven cases in support for what he called a "bedrock tenet of election law" in *Purcell*, and <u>not a single case had anything to do with ballot access for new parties or new party candidates.</u>  Those cases included: *Merrill v. People First of Ala.*, 592 U. S. \_\_\_ (2020) (Ban on curbside voting); *Andino v. Middleton*, 592 U. S. \_\_\_ (2020) (Witness requirement for absentee ballots); *Merrill v. People First of Ala.*, 591 U. S. \_\_\_ (2020) (ADA access and COVID risk at polls); *Clarno v. People Not Politicians*, 591 U. S. \_\_\_ (2020) (Laws concerning ballot initiatives); *Little v. Reclaim Idaho,* 591 U. S.

___ (2020) (Laws concerning ballot initiatives); *Republican National Committee v. Democratic National Committee*, 589 U. S. ___ (2020) (per curiam) (Deadline for absentee ballots); *Democratic National Committee v. Wisconsin State Legislature*, 592 U. S. ___ (2020) (Deadline for absentee ballots).

The reason is pretty clear why *Purcell* cannot apply in this case: *Purcell* applies to what Justice Kavanaugh called "the rules of the road": election rules involving conditions that effect entire jurisdictions, voting procedures generally, and/or the entire electorate; redistricting, absentee balloting, the COVID emergency; it has nothing to do with a new party's freedom of association guaranteed by the First Amendment. Further, Justice Kavanaugh agreed that *Purcell* was "a principle that is not absolute…" and that "the Court has not yet had occasion to fully spell out all of its contours…" Justice Kavanaugh agreed that "the *Purcell* principle thus might be overcome even with respect to an injunction issued close to an election…" and cited two exceptional cases; so what the concurrence really distinguishes are rules-based cases and rights-based cases. *Merrill v. Milligan*, supra 595 U. S. ____ ; SCOTUS *Merrill* docket, supra.

Those exceptions are just as noteworthy as the conforming cases that Justice Kavanaugh cited, and they support an injunction in this case. The cases that met Justice Kavanaugh's standards for overcoming *Purcell* principles: *Lucas v. Townsend*, 486 U. S. 1301 (1988) (Kennedy, J., in chambers) a case enjoining a bond referendum election on behalf of Black voters, and *McCarthy v. Briscoe*, 429 U. S. 1317 (1976) (Powell, J., in chambers), a ballot access case placing Eugene McCarthy directly on the ballot on September 27, 1976, <u>36-days before the general election.</u> Note: the Plaintiffs in this case

Page **10** of **18**

cited *McCarthy v. Briscoe* in the Motion for Preliminary Injunction at Dkt. 3, PageID 74, in fn. 5.

**Defendants have put forward zero "precise interests" as "justifications for the burden imposed by its rule."**

*McCarthy v Briscoe*, the ballot access case that Justice Kavanaugh cited in his *Merrill* concurrence as an exception to his overview of *Purcell* principles, has much in common with this case. What is interesting is that the defendants in *McCarthy v Briscoe* provided the same excuses and hyperbole that the Defendants do here. That is why *Anderson* requires "precise" interests, as opposed to the generalities that the state advances in every ballot access case. *Anderson,* supra, 460 U.S. at 789. While *Briscoe* concerned an independent candidate and not a new party, the case is instructive for how Justice Powell, as Circuit Justice, rejected arguments concerning delay in bringing the complaint, confusion, chaos and other stereotyped excuses to vindicate the Constitution and placed McCarthy on the ballot on September 30, 1976.

"Under the new law that [petitioning] method of qualifying for the ballot was carried forward for most offices, but not for the office of President. A Presidential candidate must now be a member of a political party as a precondition to securing a place on the ballot. An independent candidate can seek election as President only by joining or organizing a political party, or by mounting a campaign to have his supporters 'write in' his name on election day" *McCarthy v. Briscoe*, 429 U. S. 1317. (Internal citations omitted).

The defendants presented an affidavit and later live testimony to the effect that it would be impossible in the time remaining before the November election for the State to

verify that Senator McCarthy had substantial support. *McCarthy v. Briscoe*, 429 U.S. at 1319. The District Court was caught "between standing by and permitting this incomprehensible policy to achieve its apparent objective or substantially burdening the entire general election at the behest of one who has at least dawdled over his rights." Id., quoting District Court below. The District Court held that injunctive relief would be "substantially disrupting the entire [State] election scheme.." Id. at 1320.  The Court of Appeals held that "the complaint was so lately filed there is insufficient time for the Court to devise a petition requirement for ascertaining whether McCarthy has substantial community support in Texas without disrupting the entire election process in that state. . . ." Id.

*Briscoe* then cited *Storer v. Brown*, supra, 415 U. S. 724, and *Lubin v. Panish*, 415 U. S. 709 (1974) for the propositions, respectively that 1) "political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other," and, 2) "that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot." Justice Powell, in placing McCarthy on the ballot, noted, "acceptance of findings of fact does not in this case require acceptance of the conclusion that violation of the applicants' constitutional rights must go unremedied."  429 U. S. 1317.

### This is a Party Rights case, concerning New Party Formation.

Therefore, a new party has more compelling rights of association than a solitary individual.  *Storer,* supra, points out that independent candidacies and new parties are different animals. In *Storer,* the plaintiff was an independent candidate who had been a

registered Democrat until January 1972. He wanted to petition as an independent for the November 1972 election, but he couldn't because he had been a Democrat. There is less protection for independent candidates because independent candidates are solitary. There is no freedom of association problem with the California law that barred Storer because there was no association whose rights must be respected. *Storer v. Brown*, supra, 415 U. S. 724.

### Many Ballot Access Cases have been decided based on Page 215 of *Tashjian v. Republican Party*, 479 U.S. 208 (1986).

Defendants' discussion of *Tashjian* dances around almost every page of the opinion except the one Plaintiffs are urging, Page 215. Interestingly, Defendants' Dkt. 21 cites to *Tashjian* 12 times without once giving the full citation. Dkt. 21, *passim*. Defendants ignore *Tashjian's* core tenet, as it is dispositive as to the case at bar: "[a]ny effort by the state to substitute its judgment for that of the party on . . . the question of who is and is not sufficiently allied in interest with the party to warrant inclusion in its candidate selection process . . . substantially impinges on First Amendment rights." *Tashjian*, 479 U.S. 208, quoting the District Court at 599 F. Supp. 1228 at 1238 (Conn. 1984). "…a State, or a court, may not constitutionally substitute its own judgment for that of the Party." *Tashjian* at 479 U. S. 224, quoting *Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 U.S. at 450 U. S. 123-124. As such, *Tashjian* is the prototypical party rights case.

As examples of that core tenet, the Supreme Court stated, on Page 215: "Were the State to restrict by statute financial support of the Party's candidates to Party members,

or <u>to provide that only Party members might be selected as the Party's chosen nominees for public office,</u> such a prohibition of potential association with nonmembers would <u>clearly infringe</u> upon the rights of the Party's members under the First Amendment to organize with like-minded citizens in support of common political goals." *Tashjian,* 479 U.S. at 215. <u>Emphasis supplied.</u>  The 365-Day Rule does just that, <u>it provides that only Party members might be selected as the Party's chosen nominees for public office.</u> *Id*. As such, the Florida statute directly contravenes Page 215.

Thirty-six years after decision, Page 215 still maintains its vigor. Page 215 of *Tashjian* is relied on in *State of Alaska v. Alaska Democratic Party*, Appeal S-16875, 426 P3d 901 (Alaska 2018); *Woodruff v. Herrera*, (09-cv-0449 (consolidated with 10-cv-123 & 10-cv-124) (D.N.M. 2011) (March 31st., 2011): *Tashjian* is generally cited in *Libertarian Party of Maine v Dunlap*, 2:16-cv-00002-JAW (D. Me.) (May 27, 2016): "The freedom of association protected by the First and Fourteenth Amendments includes partisan political organization."  Id, citing *Tashjian v. Republican Party of Conn*., 479 U.S. 208, 214.

**This Court must carve out an exception for New Parties under the 365-Day Rule**

"[T]his [Supreme] Court has recognized the constitutional right of citizens to create and develop new political parties. The right derives from the First and Fourteenth Amendments and advances the constitutional interest of like-minded voters to gather in pursuit of common political ends, thus enlarging the opportunities of all voters to express their own political preferences" *Norman v. Reed*, 502 U.S. 279, 288 (1992).

Mere recitals concerning stabilization, voter confusion, party-swapping, and fraudulent and frivolous candidacies will not meet the rigorous standard of *Anderson-

*Burdick.* See, eg., Dkt.s 22-8, 22-5, 22-9. The restrictions must be narrowly tailored; thus, Defendants' citation to a half-century old Ohio state court case, *State ex rel. Bible v. Bd. of Elections,* 258 N.E. 2d 227, 229 (Ohio 1970), extolling the virtues of a <u>four-year disaffiliation provision</u>, is leading this Honorable Court down the wrong path.  Recall Ohio being the home state of *Williams v. Rhodes,* 393 U.S. 23 (1968), perhaps the most emphatic upholding of party rights in Supreme Court jurisprudence:

> "No extended discussion is required to establish that the Ohio laws before us give the two old, established parties a decided advantage over any new parties struggling for existence, and thus place substantially unequal burdens on both the right to vote and the right to associate. The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot, and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Williams v Rhodes,* supra, 393 U.S. 23 at 31.

Subsequent to *Rhodes*, cases like *Crussel v. Oklahoma State Election Bd.,* 497 F.Supp. 646 (W.D. Okla. 1980) *and Long v. Swackhammer,* 538 P.2d 587, 91 Nev. 498 (Nev. 1975) (per curiam) upheld the ballot access rights of new parties.

*Clingman v. Beaver*, 544 U.S. 581 (2005), where the Court upheld a statute that prohibited voters registered with one party from voting in another party's primary, also has nothing to do with new party formation, as new parties cannot hold primaries until they are established.  *Clingman*, by its own terms, acknowledged the validity of *Tashjian*: "This case presents a question that *Tashjian* left open: whether a State may prevent a

Page **15** of **18**

political party from inviting registered voters of other parties to vote in its primary. As Tashjian acknowledged, opening a party's primary to all voters, including members of other parties, … raises a different combination of considerations." *Clingman* at 544 U.S. 583.  (Internal quotes and citations omitted). "We are persuaded that any burden Oklahoma's semiclosed primary imposes is minor and justified by legitimate state interests." Id.

Thus, in fact, *Clingman* supports and reinforces the party rights that the statute in this case tramples, because it recognizes and defends the associational rights of the parties who would have lost primary voters; and *Clingman* certainly provides no justification for requiring party membership as a pre-requisite for a nominee in contravention of *Tashjian*, 479 U.S. at 215, as the Defendants would have this Court believe.  Further, *Clingman* cannot justify a party waiting a year to begin to field a candidate, missing an entire electoral cycle. In this case, the period would actually consist of 414 days, with the State spending 48 days reviewing two by-laws submissions.

*Timmons v. Twin Cities Area New Party*, 520 US 351 (1997) while often cited to conflict with *Tashjian*, does nothing of the sort. *Timmons* merely holds that bans on "fusion" candidacies are not unconstitutional *per se*, so that a state may require that a candidate cannot be listed as the nominee of more than one party on the ballot.  *Timmons* was viewed under intermediate scrutiny, because the fusion ban did not impose a severe burden; thus, the state was not required show that the ban was narrowly tailored to serve compelling state interests, unlike the case here. Instead, the state's asserted regulatory interests only had to be "sufficiently weighty to justify the limitation"  *Timmons*, 520 U.S.

at 352.  This merely ensures that the candidate will remain designated with and identified by the electorate with the original party.  In either case, states are free to allow or prohibit fusion voting.

If "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," and it does, *Elrod v. Burns,* 427 U.S. 347, 373 (1976), blocking new party formation for over a year must constitute a severe burden under *Anderson-Burdick,* and Defendants have not made a showing of compelling interest.

**Local Rule 3.01(g) Certification**

Counsel for Plaintiffs conferred with counsel for Defendants concerning the relief sought in this motion, and Defendants indicate they will oppose.

Respectfully submitted:

By:     /s/Christopher Kruger
    Attorney for Plaintiffs, pro hac vice

Christopher Kruger
The Law Offices of Christopher Kruger
2022 Dodge Avenue
Evanston, IL 60201-3434
Phone 847 420 1763; Email chris@krugerandgruber.com

### CERTIFICATE OF SERVICE

I, Christopher Kruger, an attorney, hereby certify that on June 30, 2022, I electronically filed with the Clerk of the U.S. District Court for the Middle District of Florida, Tampa Division, the foregoing Plaintiffs' Emergency Rule 59(e) Motion to Reconsider the Denial of Preliminary Injunctive Relief and Motion for an Expedited

Briefing Schedule by using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

s/Christopher Kruger__
Christopher Kruger ARDC # 6281923
KRUGER & GRUBER, LLP
205 N. Michigan Ave. Suite 810
Chicago, IL 60611
Phone: 708-420-2100
Fax: 312-268-7064
Email: chris@krugerandgruber.com