UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEOPLE'S PARTY OF FLORIDA, *et al.*,

    *Plaintiffs*,

v.

FLORIDA DEPARTMENT OF STATE,
DIVISION OF ELECTIONS, *et al.*,

    *Defendants*.

_____/

Case No. 8:22-cv-01274-TPB-AEP

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO
RECONSIDER THE DENIAL OF PRELIMINARY INJUNCTIVE RELIEF**

    Defendants, Secretary of State Cord Byrd and the Florida Department of State,

Division of Elections, and Pasco County Supervisor of Elections Brian Corley, oppose

Plaintiffs' Motion to Reconsider the Denial of Preliminary Injunctive Relief (ECF No.

26).

**INTRODUCTION**

    Plaintiffs' motion for reconsideration presents variations of the same arguments

that this Court has already considered and rejected. Their motion is nothing more than

a second bite at the apple—a continuation of argument after the final bell. Because the

Court was right the first time, and because Plaintiffs have not convincingly established

clear error or manifest injustice, the Court should deny the motion for reconsideration.

The Court should also deny the motion because this litigation is now moot. The period for candidates to qualify closed on June 17, 2022. Mysels did not comply with *any* of the requirements to qualify as a candidate—not even those she does not contest. Because Mysels did not satisfy these independent requirements of undisputed validity, any invalidation of the Affiliation Provision would afford Mysels no meaningful relief. Plaintiffs' claim is moot, and the Court should deny their motion for reconsideration.

## LEGAL STANDARD

"Reconsideration of a previous order is an extraordinary remedy intended to be used sparingly." *Berisha v. Stan*, *Inc.*, 461 F. Supp. 3d 1257, 1259 (S.D. Fla. 2020). The purpose of a motion for reconsideration is neither to repeat arguments nor to articulate new arguments that could or should have been made previously. *Knepfle v. J-Tech Corp.*, No. 8:18-cv-00543, 2020 WL 1974225, at *1 (M.D. Fla. Apr. 24, 2020); *Endurance Am. Specialty Ins. Co. v. Liberty Mut. Ins. Co.*, No. 8:17-cv-02832, 2019 WL 1901003, at *1 (M.D. Fla. Mar. 4, 2019) (Tuite, Mag.). District courts generally deny reconsideration unless the movant convincingly shows that controlling law has changed, new evidence has become available, or clear error or manifest injustice must be prevented. *Rumbough v. Se. Toyota Fin.*, No. 6:15-cv-869, 2016 WL 6836177, at *1 (M.D. Fla. Nov. 21, 2016).

## ARGUMENT

I.    **THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE FAILED TO DEMONSTRATE CLEAR ERROR OR MANIFEST INJUSTICE.**

As this Court recognized, when an election is near, the *Purcell* principle requires a movant that seeks an election-related preliminary injunction to satisfy a heightened

standard. ECF No. 25 at 3. The movant must show more than a substantial likelihood of success on the merits; it must demonstrate that its contention is "entirely clearcut." *Id*. (quoting *League of Women Voters of Fla.*, *Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1372 (11th Cir. 2022)).

Unable to satisfy this heightened standard, Plaintiffs launch two attacks against *Purcell*. First, Plaintiffs claim that the general election is not yet close enough to trigger the *Purcell* principle, since *Purcell* was decided a mere 15 days before election day. ECF No. 26 at 2, 9. But Plaintiffs' 18-page motion fails to cite the Eleventh Circuit's recent, controlling decision in *League of Women Voters*. There, the court held that a preliminary injunction issued more than three months before the commencement of vote-by-mail balloting "easily" fell within *Purcell*'s protective zone around an election. 32 F.4th at 1371 n.6.

Here, primary-election voting has already begun, ECF No. 21-1 at 4–5 ¶ 11, and general-election voting will begin by September 24, 2022, 52 U.S.C. § 20302(a)(8); Fla. Stat. § 101.62(4)(a). This case, moreover, concerns candidate qualifying, which closed on June 17, 2022. Fla. Stat. § 99.061(1). The qualification of a new, surprise candidate *after* the qualifying period—when other candidates have made their plans, allocated their resources, and begun to execute their campaigns—would engender precisely the sort of voter and candidate confusion, uncertainty, and disorder that *Purcell* condemns.

Second, Plaintiffs claim that *Purcell* is categorically inapplicable to ballot-access cases. They contend that Justice Kavanaugh, in his concurral in *Merrill v. Milligan*, 142 S. Ct. 879 (2022), made a distinction between "rules-based" cases and "rights-based"

cases and treated ballot-access and other "rights-based" cases as entirely exempt from the *Purcell* principle. ECF No. 26 at 8–11. As evidence that Justice Kavanaugh meant to exempt all ballot-access cases from *Purcell*, Plaintiffs point to Justice Kavanaugh's one citation to *McCarthy v. Briscoe*, 429 U.S. 1317 (1976) (Powell, J., in chambers)—a ballot-access case in which Justice Powell granted relief despite an imminent election.

Justice Kavanaugh, however, made no distinction between "rules-based" cases and "rights-based" cases. *See Merrill*, 142 S. Ct. at 879–82. Nowhere in his concurral did Justice Kavanaugh suggest that some election laws are immune to *Purcell*. Neither the language nor the substance of the purported distinction appears in his concurral. Justice Kavanaugh did not cite *McCarthy* as an exception to *Purcell*, but instead as a rare example of an exceptional case that satisfied *Purcell*'s heightened standard. There, Texas had enacted an absolute prohibition against ballot placement for any candidate for President who was not affiliated with a political party. 429 U.S. at 1318. Only one year before Texas passed the challenged statute, the Supreme Court had declared that precise restriction unconstitutional. *Id.* at 1320. Given the Court's then-recent ruling, Justice Powell recognized the statute's "clear constitutional infirmity," *id.* at 1321, and its "clear violation of the applicant's constitutional rights," *id.* at 1317, and denounced the State's "intransigent and discriminatory position" and "incomprehensible policy," *id.* at 1321. He also noted the "substantial public support" for the applicant—Senator Eugene McCarthy—who had garnered broad support as a Democratic candidate for President in 1968, and in 1976 had achieved ballot placement in "many States." *Id.* at

1323. Senator McCarthy's position was clear-cut, and the irreparable harm was plain.

Not so here, where no binding precedent on analogous facts supports Plaintiffs' claim, and the most applicable precedents, such as *Storer v. Brown*, 415 U.S. 724 (1974), and *Van Susteren v. Jones*, 331 F. 3d 1024 (9th Cir. 2003), run counter to their position. Nor can Plaintiffs point to broad public support; their own evidence reveals that only 15 voters in Pasco County and 402 voters across Florida are registered members of the People's Party. ECF No. 26-3 at 6–14. Legally and factually, this case is nothing like *McCarthy*. *Purcell* applies, and Plaintiffs have not shown that their position is clear-cut.

Plaintiffs argue that the Affiliation Provision excludes their party from the ballot and thus imposes a severe burden under the *Anderson-Burdick* standard, ECF No. 26 at 6–7, but they misunderstand the burden analysis. The relevant burden is the burden of compliance with the challenged law (*i.e.*, the exercise of reasonable foresight)—not the consequences of non-compliance (*i.e.*, exclusion from the ballot). Here, the challenged law simply asks parties and candidates to organize and align themselves in preparation for an election at least 365 days before candidates may qualify. That is not too much to ask. *See Storer*, 415 U.S. at 743 (finding one-year foresight of candidacy reasonable).

The Eleventh Circuit's decision in *New Georgia Project v. Raffensperger*, 976 F.3d 1278 (11th Cir. 2020), exemplifies the appropriate burden analysis under the *Anderson-Burdick* standard. There, the plaintiffs challenged Georgia's election-day deadline for voters to return vote-by-mail ballots. The court found that the burden imposed by the statute was slight—even though the consequence of non-compliance was that a voter's ballot would not be counted. "Voters must simply take reasonable steps and exert some

effort to ensure that their ballots are submitted on time . . . ." *Id*. at 1282. The relevant burden was the effort required to comply with the statute, and not the consequence of non-compliance. *See also Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1354 (11th Cir. 2009) (concluding that the burden of compliance with a state law that required voters to present photo identification as a condition of voting was "insignificant" even though the consequence of non-compliance was that the voter would not be permitted to vote).

Plaintiffs complain of the supposed hardships that the challenged law imposes. They argue that compliance requires "clairvoyance" and that the State took 48 days to approve their bylaws, thus extending the required foresight beyond one year. ECF No. 26 at 2–4, 16. But the Affiliation Provision requires no clairvoyance; it applies a simple and logical rule even-handedly to all political parties and candidates. It simply requires political parties to be organized and candidates to be aligned with their political parties at least 365 days before candidates begin to qualify. Nor is it the Affiliation Provision to blame if the People's Party needed "two tries" to submit legally compliant bylaws, which dictated the timing of state approval. ECF No. 26 at 4; *accord* ECF No. 26-1 at 3–4 ¶ 19 (explaining the defects in the bylaws initially submitted by the People's Party).

Conversely, Plaintiffs belittle the interests that support the Affiliation Provision as "generalities," "hyperbole," and "stereotyped excuses," ECF No. 26 at 11, but these are the same interests that courts have recognized time and time again when upholding similar statutes. *See, e.g.*, *Storer*, 415 U.S. at 732–33, 735–36. It is easy to comprehend how a state law that requires a candidate to maintain a party affiliation for at least 365 days before the candidate seeks the party's nomination promotes the stability of the

political process and discourages frivolous, fraudulent, and fly-by-night candidacies. Nor does the *Anderson-Burdick* standard "require any evidentiary showing or burden of proof to be satisfied by the state government." *Billups*, 554 F.3d at 1353; *accord Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997) ("Nor do we require elaborate, empirical verification of the weightiness of the State's asserted justifications."). Here, Plaintiffs have altogether failed to diminish the weight of the compelling interests that support the Affiliation Provision—interests that this and other courts have recognized.

Finally, Plaintiffs fail to explain their extended delay in seeking injunctive relief. As this Court recognized, Plaintiffs could have filed this action in May 2021, when the Affiliation Provision took effect, or in September 2021, once the Party was formed and Mysels became a member. ECF No. 25 at 5. Plaintiffs' delay demonstrates the absence of irreparable harm. *Id.* at 4–5 (citing *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016)). The affidavit evidence that Plaintiffs attach to their motion only aggravates the delay. It establishes that the individual Plaintiffs have been organizing the Party since at least 2019, ECF No. 26-1 at 1 ¶ 2; ECF No. 26-4 at 2 ¶ 4; ECF No. 26-4 at 3 ¶ 4, that the national party was seeking candidates in Florida as early as April 2021, ECF No. 26-1 at 1 ¶ 3, that Mysels herself had *actual knowledge* of the Affiliation Provision in April 2021, *id.* at 1 ¶ 4, and that the Party held its first state party meeting that same month, *id.* at 3 ¶ 13. The only explanation that Plaintiffs offer for their delay is that "constitutional lawyers . . . don't grow on trees," and that "we believed we were bound to obey the law." *Id.* at 2 ¶ 12. That is not enough. Plaintiffs' delay, combined with their limited public support (15 registered voters in Pasco County, ECF No. 26-3

at 12), refute any assertion that the Affiliation Provision causes them irreparable harm.

Plaintiffs have not established that this Court committed clear error or manifest injustice. With two statewide elections around the corner, the Court should deny the motion for reconsideration.

## II.   THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS' CLAIMS ARE MOOT.

The Court should deny reconsideration for the additional reason that Plaintiffs' claims are moot. The qualifying period closed on June 17, and Mysels did not comply with *any* of the requirements that apply to candidates who seek to be qualified—even those she does not challenge. Her failure to satisfy these unchallenged requirements is an absolute bar to her candidacy, separate and apart from the challenged law. Plaintiffs cannot, therefore, secure the meaningful relief that they seek—Mysels' qualification as a candidate and consequent placement on the general-election ballot—and their claims are moot.

To qualify, a candidate who seeks a political party's nomination for a partisan office must satisfy five requirements enumerated in section 99.061(7)(a) of the Florida Statutes. The candidate must (1) pay a filing fee or submit petitions with the required number of signatures; (2) file the candidate oath, which contains the candidate's name and signature and identifies the office sought; (3) file the written statement of political party affiliation, which includes an affirmation that the candidate has been a member of the party for at least 365 days; (4) submit a form for the appointment of a campaign treasurer and the designation of a campaign account; and (5) file a financial disclosure.

Fla. Stat. § 99.061(7)(a). The deadline for a candidate for county office to satisfy each of these requirements was noon on June 17, 2022. *Id*. §§ 99.061(2), 100.031, 100.061.[1]

June 17 came and went, and Mysels did not satisfy any of these requirements. Corley Decl. ¶ 3. She neither paid a filing fee nor submitted petitions. She did not file a candidate oath, appoint a campaign treasurer and designate a campaign account, or file a financial disclosure. Each of these omissions bars her qualification as a candidate.

A plaintiff who challenges one qualifying requirement but fails to satisfy others that remain unchallenged does not suffer a redressable injury and thus does not present a justiciable question. In *Storer*, the plaintiffs challenged three qualifying requirements that applied to independent candidates: (1) that the candidate be disaffiliated from all political parties for one year; (2) that the candidate not have voted in the last primary election; and (3) that the candidate collect a certain number of petition signatures. 415 U.S. at 727. Once the Court upheld the disaffiliation provision, it went no further. It explained that the candidates were "properly barred" by the disaffiliation provision, even if the other provisions were unconstitutional, and therefore declined to "examine the constitutionality of the other provisions . . . as applied to these candidates." *Id*. at 737.

Other courts have applied the same principle, finding that candidates who were properly barred by one qualifying requirement could not challenge another. *See Emrit v. Gale*, No. 4:17-cv-03133, 2018 WL 618414, at *3 (D. Neb. Jan. 29, 2018) (concluding

---

[1] Petition forms were due even earlier, on May 16, 2022. Fla. Stat. § 99.095(3).

that a candidate who did not satisfy other qualifying requirements had no standing to challenge a petition-signature requirement); *Kelly v. Johnson*, No. CV-08-25, 2008 WL 11394337, at \*3 (D. Mont. Oct. 9, 2008) (concluding that a candidate who did not pay a filing fee had no standing to challenge a petition-signature requirement); *Green v. Mar. Fong Eu*, 540 F. Supp. 1390, 1391 (N.D. Cal. 1981) (concluding that a candidate who did not timely file a statutorily required declaration of candidacy had no standing to challenge a petition-signature requirement). These cases recognize that a "plaintiff lacks standing to challenge a rule if an independent source would have caused him to suffer the same injury." *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288–89 (11th Cir. 2012).

Here, even if Plaintiffs could demonstrate the Affiliation Provision's invalidity, Mysels would not be a qualified candidate entitled to ballot placement. Her failure to comply with other, unchallenged requirements would prevent her from being qualified and deny her a place on the ballot. Because the Court's invalidation of the Affiliation Provision would not afford Mysels the meaningful relief she seeks, Plaintiffs' claims are moot,[2] and their motion for reconsideration should be denied. *See State of Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1280 (11th Cir. 2021) (explaining that "a

---

[2] This case concerns mootness—not standing—because standing is determined "at the time the plaintiff's complaint is filed," *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014), and qualifying had not yet commenced when Plaintiffs filed this action on June 3. Still, a justiciable controversy "must persist throughout a lawsuit." *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1113 (11th Cir. 2022). If a case "no longer presents a live controversy with respect to which the court can give meaningful relief," then the case has become moot. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000) (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)).

case becomes moot when events after its commencement 'create a situation in which the court can no longer give the plaintiff meaningful relief' (quoting *Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1308 (11th Cir. 2011)).

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for reconsideration.

June 16, 2022.                                    Respectfully submitted,

*/s/ Andy Bardos*
ANDY BARDOS (FBN 822671)
andy.bardos@gray-robinson.com
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301-1724
Telephone: (850) 577-9090
*Counsel for Supervisor Corley*

*/s/ Bradley R. McVay*
BRADLEY R. MCVAY (FBN 79034)
*General Counsel*
brad.mcvay@dos.myflorida.com
ASHLEY E. DAVIS (FBN 48032)
*Deputy General Counsel*
ashley.davis@dos.myflorida.com
stephanie.buse@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Phone: (850) 245-6536
Fax: (850) 245-6127
*Counsel for Secretary of State*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on this sixteenth day of June 2022.

/s/ *Andy Bardos*
ANDY BARDOS (FBN 822671)